## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**INSTITUTE OF MARINE**
**MAMMAL STUDIES**                                                      **PLAINTIFF**

**v.**                                                   **CAUSE NO. 1:11CV318-LG-JMR**

**NATIONAL MARINE FISHERIES**
**SERVICE, ET AL.**                                                   **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER
### REGARDING MOTIONS FOR SUMMARY JUDGMENT

BEFORE THE COURT are cross-motions for summary judgment filed by the

plaintiff, the Institute of Marine Mammal Studies ("IMMS"), and the defendants,

the National Marine Fisheries Service ("NMFS"), National Oceanographic and

Atmospheric Administration, and Rebecca M. Blank, acting Secretary of Commerce,

United States Department of Commerce (the "federal defendants").  This case calls

for review of the administrative record concerning certain actions of the federal

defendants, and the parties agree that resolution of the matter by summary

judgment is appropriate.

After consideration of the parties' arguments, the administrative record, and

the relevant law, it is the Court's opinion that the IMMS lacks standing to bring its

claim that NMFS regulations do not properly implement the Marine Mammal

Protect Act ("MMPA").  Further, the Court finds that it lacks subject matter

jurisdiction of IMMS' claims that the NMFS is improperly administering a

placement list for non-releasable sea lions.  However, the Court may review the

claims concerning the permit allowing IMMS to "take" sea lions.  The Court finds

that a term included in IMMS' permit improperly delegates federal authority to third parties. The permit will therefore be remanded to the agency for reconsideration. Each summary judgment motion is granted in part and denied in part.

THE PARTIES

Pursuant to the MMPA, the NMFS administers a network of private and governmental organizations that rescue and rehabilitate stranded marine mammals, including California sea lions. 16 U.S.C. § 1421 *et seq. See also* 50 § C.F.R. 216.27. To the extent possible, stranded sea lions are rehabilitated and then reintroduced into the wild by the stranding network organizations, consistent with the directives of the MMPA. 16 U.S.C. § 1379(h)(3). However, some are deemed non-releasable because of injuries, medical conditions, and behavioral issues that make their success in the wild unlikely. NMFS places most of these non-releasable sea lions with public display facilities. The NMFS has a wait list of about thirty public display facilities seeking such non-releasable sea lions.

The IMMS is a non-profit organization in Gulfport, Mississippi, that operates a marine mammal public display facility established for the purpose of public education, conservation and research of marine mammals in the wild and under human care. The IMMS is approved to receive non-releasable sea lions and is on the NMFS' national placement list to be considered when appropriate animals become available. The IMMS also holds a "Public Display Permit to Take Marine Mammals" issued by the NMFS on October 5, 2011, which authorizes IMMS to

obtain up to eight rehabilitated, releasable sea lions from the stranding network. (Compl. Ex. 1, ECF No. 53-1).  The IMMS brought this lawsuit to enforce the provisions of the MMPA as they apply to the IMMS' "take" permit for releasable sea lions, and its priority position to receive stranded, non-releasable sea lions.[1]

THE ALLEGATIONS OF THE COMPLAINT

The IMMS' claims are brought pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq*., the MMPA, 16 U.S.C. § 1361, *et seq*., and the Fifth Amendment to the United States Constitution.

In Count 1 of the Second Amended and Supplemented Complaint (ECF No. 53), IMMS seeks declaratory relief for agency action it alleges is arbitrary and capricious.  Specifically, the IMMS contends that NMFS is forcing IMMS to apply to take sea lions from the wild and foreclosing other methods of obtaining sea lions, such as from the stranding organizations.  By doing so, the NMFS is violating its regulations, and the purposes, intent and provisions of the MMPA to preserve the ocean populations of marine mammals.  IMMS also alleges that by allowing the stranding/rehabilitation facilities to make the final decision regarding disposition of stranded, releasable sea lions, the NMFS is unlawfully delegating its federal authority.

In Count 2 of the Complaint, IMMS seeks declaratory relief for revision of the

---

[1]  These parties reached a settlement in an earlier lawsuit brought by IMMS concerning a particular Atlantic bottle-nose dolphin.  *IMMS v. NMFS, et al.,* No. 1:10cv203-LG-RHW (S.D. Miss. May 11, 2010).

permit.  It alleges that the requirement in its permit that NMFS will not direct rehabilitation facilities to place releasable sea lions to IMMS is contrary to other permits.  IMMS alleges that the NMFS has no legal basis for giving rehabilitation facilities the right to place releasable sea lions as they choose, but retaining that right in regard to non-releasable sea lions.

In Count 3 of the Complaint, IMMS alleges Fifth Amendment due process equal protection violations, asserting that the NMFS has discriminated against it in placing sea lions.  Specifically, NMFS has withheld non-releasable sea lions; failed to give notice of all available non-releasable animals that had restranded; failed to recognize IMMS' priority among facilities requesting non-releasable sea lions; offered only sick, injured and disabled animals to IMMS while placing healthy animals at other facilities; treated IMMS differently by not allowing it to temporarily house animals at another approved facility while it waited for a second sea lion; and inconsistently applied its policies for placement of all stranded animals, resulting in the denial of sea lions to IMMS.

The IMMS seeks an order requiring NMFS to: 1) place stranded, non-releasable sea lions consistently and in accordance with the priority placement list, thereby treating IMMS as an equal to similarly situated facilities; 2) consistently apply its own regulations as to the placement of animals; 3) revise the subject Permit to comport with the authority vested in NMFS pursuant to the MMPA; and 4) refrain from intentional, wrongful and discriminatory treatment of the IMMS.

THE STANDARD OF REVIEW

Section 702 of the Administrative Procedure Act gives certain persons the

right to obtain judicial review of particular agency actions.  It provides in part that:

> A person suffering legal wrong because of agency action,
> or adversely affected or aggrieved by agency action within
> the meaning of a relevant statute, is entitled to judicial
> review thereof.

*Resident Council of Allen Parkway Village v. U.S. Dept. of Housing & Urban Dev.*,

980 F.2d 1043, 1055 (5th Cir. 1993); 5 U.S.C. § 702.  The "agency action" must be

made reviewable by statute, or "final agency action for which there is no other

adequate remedy in a court" in order to be judicially reviewable.  5 U.S.C. § 704.  "If

there is no final agency action, a federal court lacks subject matter jurisdiction."

*Qureshi v. Holder*, 663 F.3d 778, 781 (5th Cir. 2011).

The Department of Commerce, through the National Oceanic and

Atmospheric Administration and the National Marine Fisheries Service (NMFS), is

responsible for administering the MMPA in regard to many marine mammals,

including sea lions.  16 U.S.C. § 1362(12)(A)(i).  The MMPA creates no private right

of action, and therefore the plaintiff must allege violations of the MMPA as

authorized by the APA.  The APA confines the Court's authority to review agency

action as follows:

> To the extent necessary to decision and when presented, the reviewing
> court shall decide all relevant questions of law, interpret constitutional
> and statutory provisions, and determine the meaning or applicability
> of the terms of an agency action. The reviewing court shall--
>
> **(1)** compel agency action unlawfully withheld or

unreasonably delayed; and

**(2)** hold unlawful and set aside agency action, findings, and conclusions found to be--

> **(A)** arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> **(B)** contrary to constitutional right, power, privilege, or immunity;
>
> **(C)** in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
>
> **(D)** without observance of procedure required by law;
>
> **(E)** unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
>
> **(F)** unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.
>
> In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

5 U.S.C. § 706.

"This standard of review is very narrow and very deferential to conclusions and actions of the agency." *Ctr. for Marine Conservation v. Brown*, 917 F. Supp. 1128, 1143 (S.D. Tex. 1996). Judicial review is precluded entirely, however, when the "agency action is committed to agency discretion by law." 5 U.S.C. § 701; *Ellison v. Connor*, 153 F.3d 247, 251 (5th Cir. 1998).

THE GOVERNMENTAL RESPONSE TO SEA LION STRANDING EVENTS

Pursuant to the authority granted by the MMPA to establish the "Marine

-6-

Mammal Health and Stranding Response Program," the NMFS has entered into agreements with stranding organizations, which are authorized to "take" stranded marine mammals, attempt to rehabilitate them, and release them back into the wild.  16 U.S.C. §§ 1421, 1421b.[2]  Stranding organizations are "custodians" of marine mammals they hold for rehabilitation.  50 C.F.R. § 216.27(a)(2).  Animals in rehabilitation are required to be released within six months of capture unless they are deemed by the attending veterinarian to be unreleasable for specified reasons.  50 C.F.R. § 216.27(a).  Prior to releasing a stranded rehabilitated animal into the wild, the custodian is required to provide written notification to the NMFS, "unless advance notice is waived in writing by the [NMFS] Regional Director."  50 C.F.R. § 216.27(a)(2)(i)(A).  NMFS may make whatever changes it deems appropriate to the release plan, including requiring other disposition of the animal.  50 C.F.R. § 216.27(a)(3).  Stranded animals deemed unreleasable may be disposed of at the NMFS' discretion.  50 C.F.R. § 216.27(b)(2).  Within thirty days of the non-releasability determination, the custodian may request authorization to keep the animal or transfer it to an approved facility.  Otherwise, the custodian must euthanize the animal, or dispose of it in any manner authorized by the NMFS.  50 C.F.R. § 216.27(b)(3).  NMFS is authorized to require use of a rehabilitated marine

---

[2]  16 U.S.C. § 1421b provides in part that "[t]he Secretary may enter into an agreement under section 1382(c) of this title with any person to take marine mammals under section 1379(h)(1) of this title in response to a stranding."

mammal for public display and educational purposes in lieu of animals taken from the wild.  50 C.F.R. § 216.27(b)(4); § 216.27(c)(1).

JURISDICTIONAL ISSUES

At the outset, the Court must address the federal defendants' arguments concerning standing and mootness.  As Article III jurisdictional grounds for dismissal, standing and mootness are threshold issues.  *Sierra Club v. Glickman*, 156 F.3d 606, 619 (5th Cir. 1998).   The doctrine of standing concerns an analysis of whether the plaintiff had a justiciable case when the complaint was filed, while the doctrine of mootness concerns a determination of whether the plaintiff continues to assert a justiciable case throughout every stage of the lawsuit.  *See Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 458 (5th Cir. 2005); *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1041-42 (5th Cir. 1981).

## A. Standing

To be a person aggrieved under the APA, "the plaintiff must 'show at the outset of the case, that he is injured in fact by agency action and that the interest he seeks to vindicate is arguably within the zone of interests to be protected or regulated by the statute in question.'"  *Bonds v. Tandy*, 457 F.3d 409, 412 (5th Cir. 2006) (quoting *Dir., Office of Workers' Comp. Programs v. Newport News Shipbuilding & Dry Dock Co.*, 514 U.S. 122, 126-27 (1995)).  *See also Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 132 S. Ct. 2199, 2210 (2012) ("a person suing under the APA must satisfy not only Article III's

standing requirements, but an additional test: The interest he asserts must be arguably within the zone of interests to be protected or regulated by the statute that he says was violated.").

The elements of Article III standing are: (1) that the plaintiff has suffered an injury in fact; (2) that the alleged injury is fairly traceable to the defendant's allegedly unlawful conduct; and (3) that the injury is likely to be redressed by a favorable decision. *Ward v. Santa Fe Indep. Sch. Dist.*, 393 F.3d 599, 606 (5th Cir. 2004). The prudential standing test an APA plaintiff must meet "is not meant to be especially demanding," because agency action is presumptively reviewable under the APA. *Match-E-Be-Nash-She-Wish*, 132 S. Ct. at 2210 (quoting *Clarke v. Sec. Indus. Ass'n,* 479 U.S. 388, 399 (1987)).

The federal defendants argue that IMMS has made only a cursory assertion of standing in its brief, unsupported by any declaration or other specific facts. The federal defendants further contend that IMMS' allegation that it has been injured does not establish the current or imminent injury requirement to obtain declaratory or injunctive relief.

The IMMS counters that its director, Dr. Solangi, has provided an affidavit containing the facts necessary to establish standing. Dr. Solangi states that the

> NMFS' policy for placing animals, the restrictive permit conditions, and disparate treatment by NMFS, if not changed, will continue to have a detrimental impact on the financial sustainability of the IMMS facility, especially as the IMMS facility's needs grow and it requires more marine mammals.

(Pl. Reply Ex. A 3 (¶11), ECF No. 108-1). The Court notes that at the time

Complaint was filed, the IMMS was currently and prospectively subject to the

manner in which the NMFS administered the placement list, as well as the terms

and conditions of the "take" permit.  It alleged it was and would continue to be

injured by unlawful actions of the NMFS.  A favorable decision might redress

IMMS' alleged injuries by allowing it to receive sea lions.  These factors establish

that IMMS has standing to bring the placement list and "take" permit claims

alleged in its Second Amended and Supplemented Complaint.

However, IMMS fails to show standing to bring its claim that the NMFS is

operating outside its statutory authority by not issuing permits to obtain non-

releasable animals from the stranding organizations.  The IMMS contends that the

MMPA requires that the NMFS issue a permit whether the animal to be

transferred is deemed releasable or non-releasable.  The statute relating to transfer

of non-releasable animals to public display facilities states:

> Upon request by a person for a permit under paragraph (2), (3), or (4)
> for a marine mammal which is in the possession of any person
> authorized to possess it under this chapter and which is determined
> under guidance under section 1421a(a) of this title not to be releasable
> to the wild, the Secretary shall issue the permit to the person
> requesting the permit if that person –
>
> > (A) meets the requirements of clauses (i), (ii), and (iii) of
> > paragraph (2)(A), in the case of a request for a permit under
> > paragraph (2); . . .

16 U.S.C. § 1374(b)(7).

The NMFS considers transfer of a non-releasable animal to be a non-

permitted activity.  (A.R. 115, ECF No. 32-2).  It accomplishes the same objective

without issuing a permit by receiving a "Letter of Intent" from a display facility wishing to obtain non-releasable animals. *Id.*; 50 C.F.R. 216.27(c). Facilities meeting the statutory requirements for a display facility permit receive authorization for a transfer. The NMFS contends that its regulatory scheme is a much quicker method of placing non-releasable animals than the permitting process, and time is of the essence in a mass stranding event.

The NMFS argues that IMMS has no standing to object to its regulations because the IMMS has not alleged, nor can it show, an injury caused by the alleged regulatory deviance from the statute. The regulatory method is less onerous for all involved, and results in quicker placements. The NMFS notes that IMMS has received non-releasable animals using this regulatory scheme.

The IMMS does not directly address this issue. The Court has examined IMMS' complaint and briefs for assertions of injury resulting from the regulatory scheme, but has found none. The IMMS does not allege, for example, that it has obtained fewer non-releasable animals because of NMFS' regulatory scheme, and would be able to obtain more if the NMFS were to issue a permit. The IMMS asserts that the NMFS' regulations illegally treat releasable and non-releasable animals differently, which should not be tolerated. This type of bare assertion of an invalid regulation without a corresponding injury of any kind is insufficient to establish standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 576-77 (1992). Therefore, the Court finds that it lacks jurisdiction to consider the IMMS' complaints regarding the NMFS' regulatory implementation of the MMPA.

## B.  Mootness

The federal defendants contend that IMMS' APA claims regarding the placement list for non-releasable sea lions are moot.  The Fifth Circuit has set out the standard for determining mootness:

> As a general rule, any set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot.  A case should not be declared moot as long as the parties maintain a concrete interest in the outcome and effective relief is available to remedy the effect of the violation.  But a case will become moot where there are no longer adverse parties with sufficient legal interests to maintain the litigation or when the parties lack a legally cognizable interest in the outcome of the litigation.  As the Supreme Court has noted, it is not enough that a dispute was very much alive when the suit was filed; the parties must continue to have a personal stake in the outcome of the lawsuit.

*Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 527 (5th Cir. 2008) (citations and internal quotation marks omitted).

According to the federal defendants, the IMMS' receipt of four non-releasable sea lions renders any claims regarding the placement list moot, as there is no longer any relief the Court may grant in connection with non-releasable sea lions.  IMMS argues its claims are not moot, because it requested eight sea lions, but has been awarded only four.

The Court finds that IMMS' claims regarding the placement list are not moot. As the federal defendants acknowledge, IMMS is still on the placement list, and is eligible to receive additional non-releasable sea lions.  This fact alone demonstrates that the IMMS has a cognizable legal interest in the outcome of its claims regarding the placement of non-releasable sea lions.

SUBSTANTIVE ISSUES

The IMMS' claims brought pursuant to the APA can be divided into two general categories: (1) those concerning the non-releasable sea lion distribution policy and procedure; and (2) those concerning IMMS' "take" permit, which relates to releasable sea lions.

## A.  Non-Releasable Sea Lions

The NMFS has interpreted the MMPA to require a public display facility to have a "take" permit to obtain a stranded releasable sea lion, but not a stranded non-releasable sea lion.  It explains that obtaining a releasable animal from the stranding network is functionally equivalent to a capture from the wild.  But because animals determined to be non-releasable cannot be returned to the wild, their retention in captivity is not equivalent to a take from the wild.  It is for this reason that the NMFS does not issue a "take" permit to obtain non-releasable sea lions from the stranding network.  The "take" of such animals by a stranding network organization, e.g., the rescue of a stranded animal from a beach, has already been authorized pursuant to Sections 109(h) and 112(c) of the MMPA. 16 U.S.C. §§ 16 U.S.C. 1379(h), 1382(c), and 1421b.  NMFS regulations, in place since 1996, do not require that a display facility have a permit to obtain non-releasable marine mammals from the stranding network. 50 C.F.R. § 216.27(c).

The IMMS objects to the NMFS' development of a national placement list for determining which display or research facilities will receive available non-releasable sea lions.  The IMMS argues the placement list is "an illegal placement

scheme" that is "not transparent and [ ] arbitrarily administered." (Pl. Memo. 13, ECF No. 91).  The IMMS complains that the NMFS continually changes the criteria for placement of non-releasable sea lions, and while it encourages other display facilities to maintain communication with stranding organizations, it admonished IMMS for attempting to do the same.  The IMMS asserts that the NMFS has denied animals to IMMS for reasons it has not applied to other facilities.  Further, IMMS contends that NMFS has acted arbitrarily and capriciously in regard to placement of non-releasable sea lions at the IMMS.  The IMMS argues in support of summary judgment that the NMFS has prevented IMMS from receiving acceptable non-releasable animals and refused to provide IMMS with the same opportunities to facilitate placement as it has done with other facilities, in violation of IMMS' Fifth Amendment due process and equal protection rights.

The federal defendants argue in response that the placement list is a necessary tool to fairly manage disposition of non-releasable sea lions when demand exceeds supply.  In support of summary judgment, the federal defendants argue that: 1) the IMMS' claims are not reviewable because the agency decisions complained of are committed to NMFS' discretion and concern the day-to-day management of the placement program; and 2) even if judicial review were available, the administrative record shows that NMFS has not acted arbitrarily or without a rational basis.

### 1.  *Availability of Judicial Review*

The federal defendants argue that there are two reasons APA review is not

available for the procedures used by the NMFS in deciding whether and which non-releasable sea lions will be offered to IMMS.  First, because the NMFS' decisions are committed to agency discretion by statute, and second, because the IMMS' claims are in essence a broad programmatic attack on the placement program rather than a challenge to a final agency action.

The IMMS contends that NMFS' placement list procedures are changing, inscrutable and unfair.  It complains that the existence of the placement list is not authorized or indicated in any regulation or written procedure.  The IMMS only learned of the placement list when it attempted to obtain a permit for non-releasable sea lions and was told a permit was not necessary.  As the IMMS pursued the matter, it gradually learned the specific criteria the NMFS would apply in awarding sea lions to facilities on the placement list.  The IMMS contends that it had top priority on the list, but was passed over on numerous occasions because it did not yet have any sea lions.  Its request to house a sea lion at another facility until IMMS could obtain additional sea lions was denied, although the NMFS had allowed such arrangements for the Birmingham Zoo and Mystic Aquarium.  The IMMS complains that the non-releasable animals eventually offered to it were severely disabled and therefore incompatible with the intended public display use.

The Court finds that review of the NMFS' administration of the placement list is not available because the complaints do not present a final agency action, and in any event, disposition of stranded marine mammals is a matter committed to the NMFS' discretion by statute.

i) Final Agency Action

A final agency action is one that imposes an obligation, denies a right, or fixes a legal relationship. *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994). The IMMS' claims involve none of those things. They instead concern the placement process itself, seeking improvement in the way that the NMFS allocates non-releasable sea lions to display facilities. The Supreme Court, in *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990), made it clear that the final agency action requirement of the APA, 5 U.S.C. § 704, bars federal jurisdiction over suits for broad programmatic relief. The IMMS' complaints about the placement list and its treatment under the allocation system overall seek broad programmatic relief. Accordingly, the Court lacks jurisdiction to review the manner in which the NMFS allocates non-releasable sea lions.

ii) Agency Discretion

Even if the IMMS' complaints about the placement list concerned final agency action, they are not reviewable for the additional reason that the decisions regarding disposition of non-releasable animals are committed to NMFS discretion by the MMPA. Agency action is deemed to be committed to agency discretion when "statutes are drawn in such broad terms that in a given case there is no law to apply," *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 410 (1971) (citation omitted), or there is "no meaningful standard against which to judge the agency's exercise of discretion." *Heckler*, 470 U.S. at 830. If there is a lack of statutory criteria, the agency's regulations can provide the requisite law to apply. *Ellison*,

153 F.3d at 251.  But "if no judicially manageable standards are available for judging how and when an agency should exercise its discretion, then it is impossible to evaluate agency action for 'abuse of discretion.'"  *Heckler*, 470 U.S. at 830. *See also Webster v. Doe*, 486 U.S. 592, 600 (1988) (holding review of decision was precluded where the statute "fairly exudes deference" to the agency director and "foreclose[s] the application of any meaningful judicial standard of review").

The MMPA authorizes the NMFS to issue permits for public display of marine mammals, with the only criteria being whether the applicant meets the statutory requirements for public display facilities.  16 U.S.C. § 1374.  The IMMS does not complain that it meets the statutory public display requirements and the NMFS has failed to authorize it to receive non-releasable animals.  Instead, the IMMS' complaints concern how the NMFS chooses which authorized display facility will receive a non-releasable animal.

Although the MMPA authorizes the NMFS to establish a stranding response program, see 16 U.S.C. § 1421 *et seq*., it provides no guidelines for the NMFS' exercise of its stranding response duties.  When advised that a stranded animal is not releasable, the relevant regulation allows the NMFS to 1) order release of the animal, 2) order continued rehabilitation for an additional six months, or 3) order other disposition as authorized.  50 C.F.R. § 216.27(b).  Other than assuring itself that the recipient of a non-releasable animal meets statutory public display requirements, 16 U.S.C. § 1374(c)(2)(A), there is no statutory or regulatory requirement that the NMFS consider any particular factor before making a decision

about disposition.  This is an example of "unfettered" discretion; the agency has been granted authority to act by a statute that does not restrict the considerations it may rely on or the procedures by which the discretion should be exercised.  *See Perales v. Casillas*, 903 F.2d 1043, 1050 (5th Cir. 1990).  Without any legal guidelines to apply, the Court is unable to review the IMMS' complaints regarding the NMFS' administration of the placement list for non-releasable sea lions.

**B.  Releasable Sea Lions**

The IMMS' claims concerning the terms and conditions of its "take" permit are judicially reviewable pursuant to 16 U.S.C. § 1374(d)(6).  That statute specifies that review "shall be pursuant to [the APA]."  Therefore, the NMFS' actions may not be set aside unless found to be, among other things, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," or "contrary to constitutional right, power, privilege, or immunity."  5 U.S.C. § 706(2)(A) & (B).

In support of summary judgment, the IMMS argues that its "take" permit improperly granted authority and discretion to the stranding facilities to determine whether IMMS will receive a releasable sea lion.  The federal defendants respond that nothing in the text of the MMPA or its implementing regulations requires NMFS to ensure that IMMS can use its permit, or to direct stranding organizations to provide IMMS with releasable sea lions.  The NMFS has issued only two other permits authorizing a "take" from stranding organizations, and neither of those applicants asked the NMFS to instruct the stranding organizations to provide releasable animals.  The NMFS contends it was faced with an unprecedented issue

when the IMMS asked it to include a permit term requiring stranding organizations to provide IMMS with releasable sea lions.  It resolved the issue by including a term delegating authority to make a decision about whether the IMMS would receive a releasable sea lion to the stranding organizations.  The NMFS contends this was necessary because the viability of the stranding network would be threatened if the members were demoralized by the transfer of a releasable animal to a public display facility.  The NMFS cites statements from stranding network participants made during the public comment process for IMMS' permit application, such as:

> To allow the acquisition of healthy, releasable sea lions from our care would be seen by many of our volunteers (and staff and volunteer board of directors) as fundamentally inconsistent with our mission. For some, it would make their volunteer work unpalatable. Accordingly, we ask that you give due consideration to the negative impact on our volunteer workforce of a decision to grant this permit.
>
> . . .
>
> [Financial] donors support [The Marine Mammal Center]'s mission, including its philosophy that releasable animals will be returned to their home in the wild and only non-releasable animals will be placed in display facilities.  Therefore we ask that you also give due consideration to the economic impact on TMMC of the proposed placement of otherwise releasable animals in a display facility.

(Def. Mot. Summ. J. Ex. 12 at 3, ECF No. 87-12).

The federal defendants have made it clear that the NMFS allows the stranding organizations to decide whether to award a releasable sea lion to a public display facility possessing a "take" permit.  The NMFS encourages public display facilities to develop personal relationships with these stranding organizations, who might then be willing to allow a releasable animal to be housed in a public display

facility instead of being released to the wild.  The NMFS has made this grant of

discretion explicit in IMMS' permit, which states:

> This permit does not guarantee that the Permit Holder will be able to
> obtain any releasable sea lions from rehabilitation facilities, and does
> not require NMFS to direct any rehabilitation facilities to provide the
> Permit Holder with releasable sea lions.  Thus, NMFS will not make
> arrangements for animals to be provided to IMMS, and rehabilitation
> facilities are under no obligation to provide animals to fulfill this
> permit.

(2d Am. & Supp. Compl. Ex. 1 at 4 (¶2), ECF No. 53-1)

In contrast, the permits issued to Mystic Aquarium and Institute for

Exploration and Moss Landing Marine Laboratories track the language of the

applicable regulation, 50 C.F.R. § 216.27, stating:

> The Office Director has the authority to require disposition of a
> releasable marine mammal for public display purposes under this
> Permit.

(2d Am. & Supp. Compl. Ex. 2 at 4 (¶1(a)) & 11 (¶1(b)), ECF No. 53-2).

"[T]he law generally frowns on delegations from agencies to private actors."

*Am. Horse Protection Ass'n, Inc. v. Veneman*, CIV A 01-00028 HHK, 2002 WL

34471909, *4 (D.D.C. July 9, 2002) (citing *Perot v. Fed. Election Comm'n*, 97 F.3d

553, 559 (D.C. Cir. 1996)).  The Fifth Circuit has stated that an agency "may not

delegate its public duties to private entities, particularly private entities whose

objectivity may be questioned on grounds of conflict of interest."  *Sierra Club v.

Sigler*, 695 F.2d 957, 962 n. 3 (5th Cir. 1983).  "Still, an agency has not engaged in

unlawful delegation if it retains 'final reviewing authority' over a private party's

actions."  *Am. Horse Protection Ass'n*, 2002 WL 34471909 at *4 (citations omitted).

Under the regulations, NMFS maintains control over stranded sea lions. Rehabilitation organizations are directed to make a plan to release a sea lion to "the wild." *See* 50 C.F.R. 216.27(a).  The decision to release the animal in some other way is reserved to the NMFS.  50 C.F.R. 216.27(a)(3)(iv).  Nevertheless, in IMMS' permit, NMFS has expressly disclaimed authority to review the actions of the stranding organizations in regard to their decision to award a releasable sea lion to IMMS.  The stranding organizations are philosophically opposed to allowing a releasable sea lion to be publicly displayed, and the NMFS has not retained final reviewing authority over the stranding organizations' decisions regarding placement of releasable sea lions.  In the Court's view, this is an unlawful delegation of authority.  Although the NMFS may never exercise its discretion to require a stranding organization to transfer a releasable sea lion to any display facility, it must still retain that discretion for itself.  Accordingly, the Court finds that the NMFS' action of inserting a term in IMMS' "take" permit that delegates the agency's discretion to the stranding organizations, is not in accordance with law.  Pursuant to 5 U.S.C. § 706(2)(A), the permit issued to IMMS will be remanded to the NMFS for reconsideration consistent with this conclusion.  *See O'Reilly v. U. S. Army Corp. of Eng'rs*, 477 F.3d 225, 238-39 (5th Cir. 2007).  (Remand to agency for reconsideration the appropriate remedy in all but "rare circumstances.")

## C.  Fifth Amendment Equal Protection and Due Process

Even if agency action is committed to the agency's discretion by law, as in this case, "judicial review of constitutional claims is still available unless

congressional intent to preclude is clear." *Ellison*, 153 F.3d 254 (citations omitted);

5 U.S.C. § 706(2)(B).  The IMMS contends it was denied due process and equal

protection of the laws by the NMFS' method of administering the placement list, in

violation of the Fifth Amendment to the U.S. Constitution.  The Fifth Amendment's

due process clause contains an equal protection component applicable to the federal

government.  *Davis v. Passman*, 544 F.2d 865, 868 (5th Cir. 1977).  Just as with the

APA claims, the Court is to resolve this constitutional claim by summary judgment

if appropriate, based on review of the administrative record.  *Robinson v. Veneman*,

124 F. Appx. 893, 895 (5th Cir. Mar. 23, 2005).

IMMS argues that it qualifies for the class-of-one theory of equal protection,

which protects an individual from being (1) intentionally treated differently from

others similarly situated; with (2) no rational basis for the difference in treatment.

*Lindquist v. City of Pasadena Tex.*, 669 F.3d 225, 233 (5th Cir. 2012)*; Vineyard*

*Investments, L.L.C. v. The City Of Madison, Miss.*, 440 F. App'x 310, 314 (5th Cir.

2011) (quoting *Engquist v. Oregon Dept. of Agric.,* 553 U.S. 591, 601 (2008)).

The NMFS argues that the IMMS cannot challenge its exercise of discretion

under an equal protection claim on a class-of-one theory because the Supreme Court

abolished such class-of-one equal protection claims in *Engquist v. Oregon*

*Department of Agriculture*, 553 U.S. 591 (2008).  But *Engquist* did not abolish all

class-of-one claims; it eliminated only those claims in the context of public

employment.  *Id*. at 607.  No court in the Fifth Circuit has extended the holding of

-22-

*Engquist* beyond the government-employee relationship.  As the IMMS is not a public employee, *Engquist* is inapplicable here.  *See Chestang v. Alcorn State Univ.*, 820 F. Supp. 2d 772, 780 (S.D. Miss. 2011).

In support of its claim, IMMS points to 1) the unique language in its take permit;[3]  2) NMFS' approval of other display facility requests to temporarily house sea lions at other locations, while IMMS' request to do the same was denied; and 3) recently, the NMFS offered sea lions to IMMS, but would not respond to IMMS' requests for additional information regarding the condition of the animals.  As a result, the animals were ultimately awarded to others.  The IMMS also repeats its complaints that 1) the NMFS moved it to the bottom of the placement list after IMMS had received only two sea lions, when IMMS should have remained at the top of the list until it received four sea lions; and 2) the NMFS admitted in internal correspondence that it does not need to keep IMMS informed of when animals are taken in by the stranding organizations.  These last two complaints are not allegations that the IMMS was treated differently, and therefore the Court will not examine them further.

### 1. The Take Permit Language

As discussed earlier, the NMFS included language in the IMMS' take permit

---

[3]  The federal defendants argue that this claim is newly-minted and does not appear in the IMMS' complaint.  The Court does not agree, because the IMMS' Fifth Amendment claim includes the allegation that NMFS "inconsistently appl[ied] its policies for placement of all stranded animals."  (2d Am. & Suppl. Compl. 18).  This allegation encompasses claims regarding both releasable and non-releasable sea lions.

that it did not include in the permits issued to at least two other display facilities. The NMFS attempts to distinguish IMMS' permit language as necessary because in its permit application, the IMMS requested that the NMFS "instruct" the stranding facilities to allow it to have a releasable sea lion.  According to the NMFS, neither of the other two permit applicants made such a request.  The Court does not discern a difference between these comparators and IMMS.   All were applying for the right to "take" releasable sea lions, and the NMFS' authority to require stranding organizations to transfer a releasable sea lion was the same in all cases.  These comparators are similarly situated to IMMS, and IMMS was intentionally treated differently by the NMFS.

The NMFS has significant discretion in crafting its permit terms and conditions.  In addition to certain mandatory basic information, a "take" permit may contain "any other terms and conditions which the Secretary deems appropriate." 16 U.S.C. § 1374(b)(2)(D).  However, the agency's discretion does not extend so far that the permit terms may violate the law.  The Court has found that the NMFS has violated the law by delegating its public duties to the stranding organizations, expressly disclaiming its regulatory discretion to direct disposition of a releasable sea lion to a public display facility.  There is no rational reason for a permit term that is contrary to law.  Accordingly, the IMMS has shown that the NMFS has violated the IMMS' Fifth Amendment due process right by including this term in the IMMS' "take" permit.  The IMMS is entitled to reconsideration of this permit term by the NMFS.

*2. Approval to Temporarily House Sea Lions Elsewhere*

The IMMS contends that the Birmingham Zoo and Mystic Aquarium were both allowed to temporarily house sea lions at other locations, but IMMS' request to do the same while it waited for other suitable sea lions to become available was denied.  IMMS points to a letter from NMFS to the Birmingham Zoo acknowledging that two male sea lions had been transferred to the Birmingham Zoo on October 8, 2009.  (A.R. 171, ECF No. 60-5).  The letter states that "[t]hese animals are being temporarily housed at Six Flags Discovery Kingdom for quarantine and logistical reasons."  (*Id*.).  It appears that the Birmingham Zoo was in the process of making corrections to the sea lion exhibit, as it was required to provide documentation of approval of the corrections before moving the sea lions from Six Flags.  (*Id*.).

In regard to the Mystic Aquarium, IMMS provides a similar letter noting the transfer of a sea lion to Mystic two days prior, being temporarily held elsewhere for "quarantine and logistical reasons."  At the time of the letter, Mystic had already notified NMFS that it intended to transport the sea lion from its temporary location.  (Pl. Mot. Summ. J. Ex. B, ECF No. 90-2).

The federal defendants argue that the NMFS' denial of the IMMS' proposed arrangement was predicated on Animal Welfare Act regulations and the best interests of the animals:

> NMFS could not provide Plaintiff a single sea lion at the outset because sea lions are social animals requiring companionship, and Plaintiff did not have any other sea lions or other "con-specific" species such as seals.  Plaintiff proposed that NMFS award it one physically "perfect" animal meeting its requirements, and allow Plaintiff to hold

> it indefinitely at a third-party facility until a second "perfect" companion became available for award to Plaintiff. NMFS declined, explaining that this proposal was contrary to its policies and that it was in the best interest of stranded sea lions to find them permanent homes as soon as possible and to avoid unnecessary multiple transports.

(Def. Memo. in Support of Mot. Summ. J. 9-10, ECF No. 88).

NMFS provided the correspondence between itself and IMMS related to this issue. Two sea lions had become available and were offered to IMMS. IMMS declined the male, but was interested in the female. (A.R. 42, ECF No. 87-8). Acknowledging that it could not be awarded just one sea lion at that time, IMMS requested that it be allowed to hold the female at the rehabilitation facility or at another display facility until a "healthy companion animal" became available. (*Id.*). The NMFS' written response was that "[i]t is also NMFS' policy to place animals with facilities that can immediately take possession of the animal and provide necessary care and maintenance; therefore, holding the animal at another location is not an option." (A.R. 44, ECF No. 87-8). The NMFS later explained that,

> It is NMFS' policy to place animals with facilities who can take them immediately to ensure that the animal is placed into a social group as soon as possible and is not subjected to multiple transports. The availability of non-releasable animals is unpredictable and there is no way of knowing when another animal that meets a facility's requirements may be deemed non-releasable.

> On rare occasions, NMFS has authorized the temporary housing of non-releasable sea lions at other facilities due to quarantine and logistical reasons (i.e, to consolidate animals into a single location to facilitate and expedite the quarantine and transport process). These are special exceptions and not ideal situations because animals should be placed in permanent care as quickly as possible.

. . .

> We understand you are anxious to obtain California sea lions for your
> program, and we are considering your request for animals in
> accordance with the procedures described above.  We note that
> simultaneously available sea lions have been offered you previously,
> but these animals did not meet your acceptance criteria.  Given the
> specific needs of your public display program (i. e., the inability to take
> "disabled and problem animals"), we again advised you not to base the
> establishment of your collection on the unpredictable availability of
> animals from the stranding network.  We encourage you to pursue
> partnerships with other public display facilities to share animals that
> meet your criteria in order to establish a collection where single
> non-releasable animals can be incorporated.

(A.R. 92-94, ECF No. 87-8).

From this evidence, it is apparent that IMMS was treated differently from

other display facilities when the NMFS did not allow IMMS to temporarily house a

single sea lion at another facility.  But whether IMMS' comparators are "similarly

situated" is "case-specific and requires [the Court] to consider 'the full variety of

factors that an objectively reasonable . . . decisionmaker would have found relevant

in making the challenged decision.'" *Lindquist*, 669 F.3d at 234 (quoting *Griffin*

*Indus., Inc. v. Irvin*, 496 F.3d 1189, 1203 (11th Cir. 2007).

The NMFS' written responses to the IMMS' proposal make it clear that the

NMFS did not view the proposal to be similar to the other instances when it had

authorized temporary housing for an awarded sea lion.  Unlike the unpredictability

of finding another non-releasable sea lion meeting IMMS' criteria, transport and

facility maintenance issues can be resolved on a relatively short and certain time

frame.  Further, the NMFS states it had an unusually large number of non-

releasable sea lions to place when it approved the Birmingham Zoo and Mystic Aquarium temporary placements. (A.R. Ex. 8 at 183-185, ECF No. 87-8). At the time the IMMS requested a temporary holding arrangement, NMFS had display facilities on the placement list that could immediately house the animals, thus making unnecessary an arrangement the NMFS viewed as undesirable.

An objectively reasonable decisionmaker would have found all of these factors relevant. Upon consideration, the Court finds that the comparators are not similarly situated to IMMS. Even if the comparators were similarly situated, the NMFS' decision to deny the IMMS' request had a rational basis, for the reasons stated. The evidence concerning NMFS' decision to deny IMMS a temporary placement for a sea lion does not support IMMS' class-of-one equal protection claim.

### 3. The Failure to Timely Provide Information

The IMMS complains that the NMFS did not respond to its request for further medical information about available non-releasable sea lions after a mass stranding event in 2013. On March 19, 2013, NMFS notified many interested parties, including IMMS, of the mass stranding event. NMFS requested that they convey any interest in and ability to accommodate sea lions that might be deemed non-releasable. (A.R. 77, ECF No. 79-1). The IMMS responded that it could take six sea lions, and requested that the NMFS "advise us of the potential animals and facilities where these are being maintained so that we can send out [sic] representative to examine the animals when they become available." (*Id.*). After receiving no response from the NMFS, the IMMS pressed for information so that it

could "inquire about the condition and health of the animals and send our representative to inspect them prior to acceptance." (*Id.* at 79). The NMFS replied on April 4 that none of the sea lions had yet been deemed non-releasable. (*Id.*). On the same day, the IMMS received the same information again in a mass email from NMFS to the numerous display facilities that had indicated interest in the sea lions. (*Id.* at 81-82). The NMFS included additional information about the sea lions from the stranding that might eventually be deemed non-releasable; they would be weaned, approximately nine months old, showing signs of habituation towards people, have been exposed to certain viruses, and have no other physical ailments such as blindness or lameness. (*Id.* at 81). The NMFS stated that "the non-releasable animals that would be considered for placement as part of this rapid response should be considered equal in all ways except for sex." (*Id.*).

The IMMS contends it was treated differently from another display facility, because when that facility inquired on March 25 about "why the specimens may be deemed non-releasable," the NMFS responded the same day with the same information that was sent in the mass email a few days later to all of the interested display facilities. (A.R. Ex. 4, ECF No. 82-4 at 63-64). IMMS argues that the NMFS "purposely withheld pertinent health information about the available animals, which was necessary for their safe transport and subsequent care and maintenance." (Pl. Memo. 29, ECF No. 91).

The Court finds that IMMS' assertions are contrary to the evidence of record. There were no available animals at the time the NMFA responded to IMMS and the

other display facility.  Only a matter of days passed between the time the information was provided to the other facility and IMMS, during which time none of the animals became available.  Additionally, IMMS did not ask for the same information that the other display facility did.  IMMS wanted to know where the animals were being held so that it could inquire about their condition and inspect them.  The other display facility asked why the animals might be non-releasable.  In the Court's opinion, there is no question of material fact in regard to this issue.  The IMMS was not intentionally treated differently from others similarly situated.

CONCLUSION

The Court finds that it lacks subject matter jurisdiction of the IMMS' claims regarding the NMFS' administration of the national placement list and the improper implementation of the permit provisions of the MMPA.

In regard to the permit to "take" a releasable sea lion, the NMFS has impermissibly delegated its discretion.  The NMFS has further treated the IMMS differently without a rational basis, in violation of the Fifth Amendment.  For these reasons, the Court concludes that the permit should be remanded to the agency for reconsideration.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the plaintiff's Motion for Summary Judgment [90] is **GRANTED** to the extent that the "take" permit issued to the Plaintiff is remanded to the NMFS for reconsideration consistent with the Court's conclusions above.  The plaintiff's Motion is **DENIED** in all other respects.

-30-

**IT IS FURTHER ORDERED AND ADJUDGED** that the federal defendants' Motion for Summary Judgment [87] is **DENIED** to the extent that the "take" permit issued to the Plaintiff is remanded to the NMFS for reconsideration consistent with the Court's conclusions above.  The federal defendants' Motion is **GRANTED** in all other respects.

**IT IS FURTHER ORDERED AND ADJUDGED** that the Public Display Permit To Take Marine Mammals, No. 15537, issued to IMMS on October 5, 2011, is **REMANDED** to the NMFS for reconsideration consistent with this memorandum opinion and order.

**SO ORDERED AND ADJUDGED** this the 22nd day of May, 2014.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE